**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0075-17T3

IN THE MATTER OF THE
STATE PAROLE BOARD'S
FINAL DECISION TO REVOKE
JOE BROWN'S MANDATORY
SUPERVISION STATUS.

_____

Submitted April 29, 2019 – Decided May 7, 2019

Before Judges Sabatino, Mitterhoff and Susswein.

On appeal from the New Jersey State Parole Board.

Reed Smith LLP, attorneys for appellant Joe Brown (David G. Murphy, of counsel and on the briefs).[1]

Gurbir S. Grewal, Attorney General, attorney for respondent New Jersey State Parole Board (Melissa H. Raksa, Assistant Attorney General, of counsel; Erica R. Heyer, Deputy Attorney General, on the brief).

PER CURIAM

---

[1] Attorney Murphy represented appellant on appeal pro bono pursuant to Madden v. Delran, 126 N.J. 591 (1992).

Appellant Joe Brown appeals from a final agency decision of the New Jersey State Parole Board revoking his parole. Having reviewed the record in light of the governing legal principles, we reverse.

In 2003, appellant was sentenced to a custodial concurrent term of 13 years for attempted murder, N.J.S.A. 2C:5-1, 2C:11-3, aggravated assault on a police officer, N.J.S.A. 2C:12-1b(5)(a), certain persons not to have a weapon, N.J.S.A. 2C:39-7(b), and two counts of possession of a controlled dangerous substance ("CDS"), N.J.S.A. 2C:35-10(a)(1). After serving over a decade of this sentence, appellant was paroled in July 2014. As of appellant's July 2014 release to parole supervision, the most recent offense he had committed was in September 2003. Subsequent to being released on parole, appellant did not commit any new crimes. Appellant's maximum release date is July 2019.

Prior to his incarceration, appellant was diagnosed with mental illnesses including schizophrenia, bipolar disorder, depression, and anxiety. While incarcerated, appellant received medication to treat these conditions. Inexplicably, forty-five days prior to his release, the Department of Corrections slowly "weaned him off" these medications. Accordingly, at the time of his release, all of his medications had been discontinued.

A-0075-17T3

Appellant then relocated to Michigan pursuant to an approval for transfer of supervision. In Michigan, appellant resided first with his sister, and thereafter with his girlfriend, with whom he shares a daughter.

Number 10 of the twenty general conditions of appellant's mandatory supervision, which appellant acknowledged in writing, stated:

> I am to refrain from the purchase, use, possession, distribution or administration of any narcotic drug, controlled dangerous substance, or controlled substance analog as defined in N.J.S.A. 2C:35-11, or any dangerous paraphernalia as defined in N.J.S.A. 2C:36-1 related to such substances, except as prescribed by a physician.

It is undisputed that appellant violated this condition of his parole on eight occasions between May 5, 2015 and October 13, 2016, by testing positive for marijuana use. Based on these violations, the Board sought to revoke appellant's parole, and issued a warrant for his arrest.

On October 26, 2016, the date appellant was due to surrender to Michigan parole pending extradition to New Jersey, appellant was admitted to a Michigan hospital for psychiatric treatment after his girlfriend discovered him in the midst of a serious mental health crisis that involved a threat of self harm. Appellant remained under inpatient treatment until his discharge on November 14, 2016.

A-0075-17T3

On March 9, 2017, Hearing Officer Carla M. Shabazz conducted a mandatory supervision violation hearing. At the hearing, appellant, represented via video-teleconferencing by pro bono counsel, admitted to the use of marijuana on eight occasions. By way of mitigation, appellant through his attorney indicated that after his release he struggled with mental illness, including the circumstance that, although he had received treatment while incarcerated, the DOC "weaned" him off his medications prior to his release. Appellant testified that he tried to seek out programs in Michigan but was told by his parole officer there was nothing available for him without payment.[2] It was not until his psychiatric admission that he received sustained treatment for his mental health disorders, including medication, one-on-one counseling, stress/anger management, and psychiatric treatment. Appellant stated that he felt better equipped to remain on parole now that he was receiving proper medication.

At the time of the hearing, appellant was living with his girlfriend and their eight-month-old daughter. He had maintained consistent employment since living in Michigan: specifically, he worked as a full-time yard man from July

---

[2] The only "treatment" reflected in the record is a referral to substance abuse counseling. There is no indication that that counseling addressed appellant's need for medication to treat his underlying mental health disorders.

A-0075-17T3

2014 to December 2015; a stocker at Meijer Grocery Store from January through April 2016; and full time as a fork lift driver at Phillips pet food supply until the time of his arrest. Appellant testified that he was on probation at his job prior to his arrest and was on track to receive full-time benefits, including health benefits, once his probationary period ended.

In closing, appellant's attorney argued that the violations were not serious or persistent as to warrant revoking appellant's probation, especially in light of his well-documented compliance with the remaining terms of his parole. Moreover, counsel noted that appellant's claim that he was "self-medicating" his significant mental health issues with marijuana was evidenced by the fact that once appellant received appropriate medical treatment for his condition, he successfully avoided any further marijuana use.

In response, the Parole Officer read into the record the eight dates on which appellant violated condition #10 of his mandatory supervision. In closing, he argued:

> A review of the classification material shows that [appellant] has a poly-substance history and considers substance abuse to be a problem for him. He has a lengthy criminal record which includes: theft, burglary, robbery, other property crimes, assault, weapons and CDS offenses. When weighed against [appellant's] criminal record and his mental health needs, the

A-0075-17T3

violations appear serious and persistent in nature, and revocation is recommended at this time.

Based on this evidence, Hearing Officer Shabazz concluded that "clear and convincing evidence does exist to believe that subject committed the cited violation. The violation is not serious and persistent as to warrant revocation at this time." Her recommendation was that "the subject could benefit from an opportunity in an inpatient community treatment program to address his drug use rather than returning him to incarceration at this time."

On April 4, 2017, however, a Board Panel rejected the Hearing Officer's findings and concluded that the violation was serious as to warrant revocation. As its basis for so finding, the two-member panel noted that

> Subject has a long violent history, including a NERA sentence for Attempted Murder and Aggravated assault on a Police Officer, combined with an assault on 2 Corrections Officers while in custody, raise concerns for his parole to the street. He has failed to address his mental health issues as evidence by his serious and persistent use of marijuana.[3]

On appeal to the full Board, the Board issued its Final Agency Decision on July 19, 2017, upholding the decision to revoke parole. The Board's decision

---

[3] The panel incorrectly states that appellant's criminal history includes an assault on a police officer and a separate assault on two corrections officers. In fact, appellant's conviction for aggravated assault on a police officer arises from an altercation that appellant had with two corrections officers while incarcerated.

is devoid of any analysis why it was overruling the Hearing Officer's findings and recommendations, other than to tersely state that her decision was not binding on the Board. The Board also denied that it was relying on appellant's criminal history in revoking parole, alleging it was making its decision solely based on the eight occasions on which appellant used marijuana over a two-and-a-half year period. Despite this denial, in the penultimate paragraph of its decision, the Board recounts in detail appellant's criminal history, which ended in September 2003, eleven years before his release on parole. After this recitation, the Board concludes that "upon consideration of the facts cited above, the Board has fully supported its decision pursuant to N.J.A.C. 10A:71-7.18(b).

This appeal followed. On appeal, appellant argues that the Board accorded undue weight to a remote criminal history, and failed to explain why it was rejecting out-of-hand the significant mitigating factors that weighed against revocation.

In reviewing the final decision of the Board, we start with the well-established precept that "[a] strong presumption of reasonableness attaches to the actions of administrative agencies." In re Vey, 272 N.J. Super. 199, 205 (App. Div.), aff'd, 135 N.J. 306 (1993). Thus, appellate courts "will reverse the decision of the administrative agency only if it is arbitrary, capricious or

unreasonable or it is not supported by substantial credible evidence in the record as a whole." Henry v. Rahway St. Prison, 81 N.J. 571, 579-80 (1980) (citing Cambell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963)). "The question for a court is 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record, considering the proofs as a whole, with due regard to the opportunity of the one who heard the witnesses to judge of their credibility.'" Hobson v. N.J. St. Parole Bd., 435 N.J. Super. 377, 388 (App. Div. 2014) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). In this regard, we observe that it was Hearing Officer Shabazz alone who had the opportunity to hear the witnesses and judge their credibility. Thus, our normal deference is tempered by the Board's failure to consider and/or outright rejection of Shabazz's findings of fact. Cf. H.K. v. State, 184 N.J. 367, 384 (2005); Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 587-88 (1988) (finding that when an agency head strays from the factual findings of an ALJ, we need not accord the agency head the level of deference we ordinarily recognize in reviewing final administrative decisions).

Moreover, our deference to agency decisions "is premised on [the court's] confidence that there has been a careful consideration of the facts in issue and appropriate findings addressing the critical issues in dispute." Bailey v. Bd. of

Rev., 339 N.J. Super. 29, 33 (App. Div. 2001). If an appellate court concludes that an agency's

> finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction, then, and only then, it should appraise the record as if it were deciding the matter at inception and make its own findings and conclusions. While this feeling of "wrongness" is difficult to define, because it involves the reaction of trained judges in the light of their judicial and human experience, it can well be said that that which must exist in the reviewing mind is a definite conviction that the judge went so wide of the mark, a mistake must have been made. This sense of "wrongness" can arise in numerous ways—from manifest lack of inherently credible evidence to support the finding, obvious overlooking or underevaluation of crucial evidence, a clearly unjust result, and many others.
>
> [Clowes, 109 N.J. at 588-89 (quoting State v. Johnson, 42 N.J. 146, 162 (1964)).]

In the context of review of the Parole Board's denial or revocation of parole, our Supreme Court has cautioned that the Board should not exercise "selective and arbitrary reliance on only those portions of the record that could possibly support the Board's conclusion." Trantino v. N.J. St. Parole Bd., 166 N.J. 113, 189 (2001) ("The Board failed to address, and in fact utterly

disregarded, substantial evidence in the record, spanning many years of infraction-free incarceration and favorable psychological evaluations, that demonstrated Trantino's likelihood of success on parole.") (citing State in the Interest of C.A.H. & B.A.R., 89 N.J. 326, 344 n.5 (1982)).

"A person who has been sentenced to a term of parole supervision and is on release status in the community pursuant to [N.J.S.A. 2C:43-7.2] . . . shall be subject to the provisions and conditions set by the appropriate board panel." N.J.S.A. 30:4-123.51b(a). The board panel, in certain circumstances and in accordance with set procedures, "shall have the authority . . . to revoke the person's release status and return the person to custody for the remainder of the term or until it is determined, in accordance with regulations adopted by the board, that the person is again eligible for release consideration[.]" Ibid. Where a "parolee . . . has seriously or persistently violated the conditions of his parole, [he] may have his parole revoked and may be returned to custody[.]" N.J.S.A. 30:4-123.60(b).

> If the parolee has not been convicted of a crime committed while on parole or in the case of a juvenile parolee not adjudicated delinquent for an act which, if committed by an adult, would constitute a crime, the purpose of the revocation hearing shall be to determine:

1. Whether, by clear and convincing evidence, the parolee has seriously or persistently violated the conditions of parole; and

2. Whether revocation of parole is desirable.

[N.J.A.C. 10A:71-7.12(c).]

See also Hobson, 435 N.J. Super. at 391 (citations omitted) ("The Legislature did not grant the Board unbridled discretion to revoke the release status of a person subject to a term of NERA parole supervision. Absent conviction of a crime, the Board has that authority only if the parolee 'has seriously or persistently violated the conditions of his parole.' A decision of a Panel or Board revoking parole without an articulation of the basis for revocation under the statutory standard has an appearance of unfairness and caprice that not only invites but requires careful scrutiny by a reviewing court.").

Clear and convincing evidence

> requires evidence that persuades the fact finder "that the truth of the contention is 'highly probable.'" Stated differently, the evidence must be sufficient to "'produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" Even "evidence that is uncontroverted may nonetheless fail to meet the elevated clear and convincing evidence standard."
>
> [Hobson, 435 N.J. Super. at 387 (citations omitted).]

After a revocation hearing, a parole board panel shall issue a decision that includes "[t]he particular reasons for the decision and the facts relied upon[.]" N.J.A.C. 10A:71-7.18(b)(2). "[I]t is a fundamental of fair play that an administrative judgment express a reasoned conclusion. A conclusion requires evidence to support it and findings of appropriate definiteness to express it." Hobson, 435 N.J. Super. at 391 (quoting N.J. Bell Tel. Co. v. Communications Workers of America, 5 N.J. 354, 375 (1950)).

Unfortunately, in this case it is apparent that the Board simply turned a blind eye to the crucial evidence considered by the Hearing Officer, which included the significant strides appellant had made while living in Michigan. He maintained consistent employment, including a full-time job as a fork lift driver that promised to provide needed health benefits. He had started a family and was supporting his eight-month-old daughter. The Board was aware, but simply disregarded, the undisputed evidence that appellant suffered from serious mental health conditions including schizophrenia and bipolar disorder. Those conditions went untreated due to lack of medical coverage from the time the DOC "weaned him off" his needed medication just prior to his release on parole until his psychiatric hospital admission after a serious mental health crisis. The Board without explanation rejected appellant's testimony that he felt better

equipped to avoid future marijuana infractions now that he was being provided with appropriate medication and psychiatric treatment, despite the Hearing Officer's having credited that testimony in concluding that appellant was better served with treatment and not incarceration.

Moreover, it is equally apparent that the Board accorded undue weight to appellant's criminal history. The Board and Panel repeatedly relied on appellant's conviction in 2003 – the very conviction that he was paroled for in the first place, to justify its decision. Tellingly, the State's Confidential Appendix contains nothing other than appellant's criminal history dating back to a violation of curfew as a juvenile in 1993. Nothing in the Appendix postdates 2003; the year of appellant's incarceration, as appellant has committed no new crimes since being paroled. The Board's myopic reliance on remote criminal offenses constitutes the very "selective and arbitrary reliance on only those portions of the record that could possibly support the Board's conclusion" that the Supreme Court cautioned against in Trantino, 166 N.J. at 189. Aside from the stale evidence of appellant's crimes, the record shows nothing other than what the Hearing Officer found: a parolee struggling with mental health issues who smoked marijuana in the face of an inability to afford treatment. Because the Hearing Officer's findings and conclusion that the violations were neither

13

serious nor persistent are amply supported by the credible evidence in the record, we conclude that the Board's rejection of her decision and its revocation of appellant's parole was arbitrary and capricious, and led to an unjust result.

Because we are reversing the revocation of appellant's parole based on substantive grounds, we need not address his alternative argument that the Board failed to timely address his appeal.

Because appellant's maximum release date is July 2019, we direct that the Board exercise due haste to effect appellant's release.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

14