# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3411-22

Q.C., a juvenile,

     Appellant,

v.

JUVENILE JUSTICE
COMMISSION,

     Respondent.

_____

Argued December 18, 2024 – Decided January 10, 2025

Before Judges Mayer, Rose and Puglisi.

On appeal from the Juvenile Justice Commission.

Scott Michael Welfel, Assistant Deputy Public Defender argued the cause for appellant (Jennifer N. Sellitti, Public Defender, attorney; Morgan A. Birck, Assistant Deputy Public Defender, of counsel and on the briefs).

Christopher C. Josephson, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant Attorney General, of counsel; Christopher C. Josephson, on the brief).

PER CURIAM

Q.C. appeals from a March 27, 2023 final agency decision of the Juvenile Justice Commission (JJC), finding he violated the conditions of his parole supervision and revoking his parole. For the following reasons, we reverse and remand.

On March 22, 2023, a hearing officer conducted a hearing on the revocation of Q.C.'s parole supervision status. The following witnesses testified: Q.C.'s parole officer, Officer Brandon Moran; Woodbury Detective Brandon Volk, who testified about a carjacking and robbery incident on February 22, 2023; Camden County Officer Richard Gallagher, who testified about Q.C.'s February 23, 2023 arrest; and Q.C.'s mother. Based upon clear and convincing evidence, the hearing officer found Q.C. violated the conditions of his parole by possessing a weapon. The hearing officer determined Q.C.'s violations to be serious and persistent, the violations posed a danger to public safety, and no form of community-based supervision would alleviate the danger. The hearing officer issued a written summary report in support of revoking Q.C.'s parole.

Based on the evidence adduced at the parole revocation hearing, the JJC found Q.C. knew the conditions of his parole. Despite awareness of the parole

supervision conditions, the JJC determined Q.C. possessed a firearm, a large capacity ammunition magazine, and dum-dum bullets on February 23, 2023. The JJC concluded Q.C. violated two parole conditions: refraining from owning or possessing any firearm, N.J.S.A. 2C:39-1(f), and refraining from owning or possessing any weapon, N.J.S.A. 2C:39-1(r). The JJC affirmed the hearing officer's findings that Q.C. seriously and persistently violated his parole conditions. The JJC concurred Q.C. was a danger to the public and no form of community-based supervision would adequately protect the public. The JJC revoked Q.C.'s parole and adjusted his maximum custody date to November 3, 2024, with an April 18, 2024, projected parole date.

While on parole supervision, Q.C. incurred a criminal charge in Camden County for unlawful possession of a weapon without a permit. The charge triggered Q.C.'s revocation hearing and ultimate parole revocation. In Q.C.'s adult criminal pretrial detention hearing on the weapon offense, a Camden County Superior Court judge found Q.C. was not a danger to the community and released him on Level 3 monitoring pending trial.

On appeal, Q.C. raises the following arguments:

POINT I

> THE HEARING OFFICER'S FAILURE TO DEFER
> TO OR REBUT THE DECISION OF THE SUPERIOR

COURT JUDGE THAT THERE WAS NO EVIDENCE Q.C. WAS A DANGER TO THE PUBLIC WAS ERROR, REQUIRING REVERSAL.

A. The doctrine of collateral estoppel requires the hearing officer to abide by the trial court's findings on public safety.

B. Due process and fundamental fairness require an explanation for why the JJC's decision differs from the Law Division's.

POINT II

THE HEARING OFFICER FAILED TO GIVE AN EXPLANATION FOR WHY NO FORM OF COMMUNITY-BASED SUPERVISION WAS APPROPRIATE OR HOW REVOKING PAROLE IS CONSISTENT WITH THE PROVISIONS OF N.J.S.A. 2A:4A-21.

POINT III

THE [JJC] FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT Q.C. POSSESSED THE GUN IN THIS CASE.

POINT IV

THE [JJC]'S DECISION TO REVOKE PAROLE PRIOR TO AN ADJUDICATION OF THE CHARGE FOR WHICH Q.C. WAS ARRESTED VIOLATED Q.C.'S RIGHT TO DUE PROCESS AND FUNDAMENTAL FAIRNESS.

Having reviewed the record, we are satisfied Q.C.'s arguments, with the

exception of the argument raised in Point II, lack sufficient merit to warrant an

4                                                         A-3411-22

extended discussion in a written opinion.  R. 2:11-3(e)(2).  We briefly address the Q.C.'s arguments in Points I, III, and IV.

As to Point I, the JJC had jurisdiction over Q.C.'s alleged parole violations and properly conducted a parole revocation hearing.  There is no court rule or statute requiring the JJC defer to a Superior Court judge's pretrial release determination and findings for an offense allegedly committed by an adult.  The standards for determining whether to grant pretrial release to a criminally charged adult differ from the standards applied to a juvenile in revocation matters.

The Criminal Justice Reform Act (CJRA), N.J.S.A. 2A:162-15 to -26, which governs pretrial detention determinations for adults who are criminally charged, "requires both some proof about the crime–sufficient to establish probable cause–and proof relating to the risk of flight, danger, or obstruction." State v. Robinson, 229 N.J. 44, 67 (2017).  If the State establishes probable cause that the defendant committed the charged offenses, the pretrial detention judge must "determine whether detention is warranted–that is, whether any combination of conditions will reasonably protect against the risk of flight, danger, or obstruction."  State v. Mercedes, 233 N.J. 152, 163 (2018).  In addressing pretrial detention, our Supreme Court stated:

5

> At the hearing, the court "may take into account" various factors, including "[t]he nature and circumstances of the [charged] offense"; the weight of the evidence proffered against the defendant; characteristics of the defendant as he or she stands before the court, including his or her employment status, familial ties, and length of residence in the community; "[t]he nature and seriousness of the danger" that would be posed to other persons or the community if the defendant were released; the risk that the defendant will obstruct the criminal justice process; and the PSA recommendation.
>
> [State v. S.N., 231 N.J. 497, 511 (2018).]

While an adult defendant's prior juvenile record "may count in the detention calculus, [it] should not be weighed as heavily as prior adult convictions." State v. C.W., 449 N.J. Super. 231, 260 (App. Div. 2017).

The objectives of the juvenile justice system differ from the adult criminal justice system. See, e.g., In re Registrant J.G., 169 N.J. 304, 335 (2001) (emphasizing the Juvenile Code's preference for "supervision, care and rehabilitation" as alternatives to incarceration). Despite the laudatory objectives for juveniles adjudicated delinquent, a juvenile's parole may be revoked if:

> (1) the juvenile has seriously or persistently violated the conditions of parole;
>
> (2) the juvenile poses a substantial danger to public safety and no form of community-based supervision would alleviate that danger; and

6

(3) revocation is consistent with the provisions of [the Juvenile Code].

[N.J.S.A. 2A:4A-44.]

Notably, unlike a pretrial detention judge, a juvenile hearing officer must consider a juvenile's record in deciding whether to revoke a juvenile's parole. Ibid.

Here, the parole revocation hearing officer properly considered Q.C.'s juvenile adjudications in determining whether to revoke Q.C.'s parole. However, the pretrial detention judge handling Q.C.'s weapon offense as a criminally charged adult had no obligation to consider Q.C.'s juvenile history when deciding whether Q.C. should be detained pretrial.

Additionally, contrary to Q.C.'s argument, the doctrines of res judicata and collateral estoppel are inapplicable in this case. Those doctrines apply to findings made by one court that are binding on a subsequent court's decision. Here, the JJC, a State agency, revoked Q.C.'s juvenile supervised parole. Only our appellate courts have jurisdiction to review final agencies decisions, including a determination by the JJC. Prado v. State, 186 N.J. 413, 422-23 (2006); R. 2:2-39(a)(2).

As to Point III, regarding findings that Q.C. possessed a gun in violation of a condition of his supervised juvenile parole, we defer to the JJC's fact-

findings and credibility determinations based on credible evidence in the record. Close v. Kordulak Bros., 44 N.J. 589, 599 (1965). In a juvenile matter, the evidence supporting revocation of parole must be clear and convincing. Hobson v. N.J. State Parole Board, 435 N.J. Super. 377, 382 (App. Div. 2014). Here, the parole revocation hearing officer and the JJC made findings, based on clear and convincing evidence in the record, that Q.C. violated the conditions of his supervised parole by possessing a gun. We decline to disturb those findings.

As to Point IV, a juvenile's parole may be revoked where the juvenile seriously and persistently violated the conditions of parole. See N.J.S.A. 2A:4A-44. Here, the hearing officer found, and the JJC agreed, Q.C. seriously and persistently violated the conditions of his parole by allegedly committing a similar offense, unlawful possession of a weapon, within a few months of his parole release on his juvenile adjudication involving weapon offenses.

Although we reject Q.C.'s arguments asserted in Point I, III, and IV of his merits brief, we are persuaded by Q.C.'s argument raised in Point II that the parole revocation hearing officer failed to explain "why no form of community-based supervision was appropriate."

Our review of an administrative agency's decision, such as the JJC's, is deferential and limited to evaluating whether the agency acted arbitrarily or

abused its discretion. In re Vey, 272 N.J. Super. 199, 205-06 (App. Div. 1993). "The question for a [reviewing] court is 'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility." Hobson, 435 N.J. Super. at 388 (quoting Close, 44 N.J. at 599). We defer to an administrative agency's "technical expertise, its superior knowledge of its subject matter area, and its fact-finding role." Messick v. Bd. of Rev., 420 N.J. Super. 321, 325 (App. Div. 2011).

Here, Q.C. bears the burden of demonstrating the JJC's actions were arbitrary, unreasonable, or capricious. Bowden v. Bayside State Prison (Dep't of Corr.), 268 N.J. Super. 301, 304-05 (App. Div. 1993). Q.C. argues the failures of the parole revocation hearing officer and the JJC to explain why no mechanism for community-based supervision was appropriate compels this court to conclude the JJC's decision was arbitrary, unreasonable, or capricious.

At appellate argument, the JJC's counsel agreed there were no specific findings in the record explaining why no form of community-based supervision could be imposed to alleviate the danger to the public's safety. See N.J.S.A. 2A:4A-44(e)(2). Without stating any findings, the parole revocation hearing

officer simply concluded "no form of community-based supervision would alleviate [the substantial danger to public safety]." Because the record lacks any explanation why Q.C.'s danger to the community could not be addressed through some form of community-based supervision, we are unable to determine whether the JJC's decision was arbitrary, capricious, or unreasonable. Thus, we are constrained to remand the matter to the JJC to include specific factual findings addressing this issue. The remand hearing shall be conducted within forty-five days of the date of this opinion. We take no position on the outcome of the remand determination.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3411-22