**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2335-18T3

REGINALD HELMS,

    Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

    Respondent.

_____

          Submitted May 11, 2020 – Decided July 15, 2020

          Before Judges Ostrer and Susswein.

          On appeal from the New Jersey State Parole Board.

          Weil Gotshal & Manges, attorneys for the appellant (Richard Michael Heaslip and Rachel A. Farnsworth on the briefs).

          Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Suzanne Marie Davies, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner, Reginald Helms, appeals from a final agency decision by the New Jersey State Parole Board (Board) revoking his parole and ordering him to serve one year in state prison for violating conditions of parole supervision for life (PSL). [1] Helms was administratively convicted of violating three PSL conditions: (1) refraining from the purchase, use, possession, distribution, or administration of a controlled dangerous substance (CDS) or an imitation CDS; (2) failing to follow a curfew; and (3) driving without a valid license. He contends the Board failed to prove these violations by clear and convincing evidence. He denies he possessed a CDS or imitation CDS and contends that the curfew and driving-without-a-license violations should be excused or at least mitigated because he was suffering a medical emergency at the time and was attempting to get to the hospital. He further contends the Board failed to establish that his violations were serious and persistent and that revocation of parole was desirable.

We have carefully reviewed the record in view of the applicable principles of law governing this appeal, including the deference we owe to an

_____

[1] Helms completed the one-year term and has since been released from state prison. He contends this appeal is not moot because there may be future ramifications from the present administrative convictions and parole revocation. We have decided to hear this appeal on its merits.

A-2335-18T3

administrative agency acting within the ambit of its expertise. Although we believe more might have been done to prove that the envelopes seized by police contained heroin or an imitation CDS, we affirm the Board's findings and its final order revoking parole.

I.

In 2006, a jury convicted Helms of second-degree sexual assault and third-degree endangering the welfare of a child. He was sentenced on those convictions to an aggregate term of ten years imprisonment, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. As required by NERA, the court imposed a three-year term of parole supervision which was to begin immediately upon his release from prison. In addition, Helms was placed on PSL pursuant to Megan's Law, N.J.S.A. 2C:7-1 to -23.

After completing the custodial portion of his sentence, Helms was arrested while on parole for possession of CDS and driving without a license. As a result, his parole was revoked and he was returned to custody.

Helms was subsequently released from prison and placed in the Re-Entry Substance Abuse Program (RESAP). While in RESAP, Helms's three-year parole supervision term under NERA expired. After he was released from

RESAP, the Board continued to supervise Helms pursuant to his sentence of PSL.

Less than six months after being released from reimprisonment following revocation of parole, Newark Police stopped and ticketed Helms for operating a vehicle without a valid driver's license. Helms's parole officer did not initiate the parole revocation process for that violation. Instead, the parole officer imposed a curfew of 9:00 p.m. to 6:00 a.m. as a general condition of PSL.

On March 21, 2018, just two months after being placed under curfew, the police stopped Helms around midnight while he was operating a motor vehicle. The police seized suspected CDS during the encounter. Helms was charged with the disorderly persons offense of failing to turn CDS over to a law enforcement officer in violation of N.J.S.A. 2C:35-10(c).[2]

Parole authorities initiated the process of revoking parole based upon this incident. Helms waived a probable cause hearing and proceeded directly to a final parole revocation hearing. Helms entered a plea of not guilty to violating PSL condition twelve, refraining from the use, possession, distribution, or administration of any narcotic drug, CDS or CDS analog, imitation CDS or imitation CDS analog. Helms entered a guilty-with-an-explanation plea to

---

[2] The municipal court charges were eventually dismissed.

A-2335-18T3

violating PSL condition nineteen, failing to comply with a curfew established by the assigned parole officer. Helms also entered a guilty-with-an-explanation plea to violating PSL condition twenty, refraining from operating a motor vehicle without a valid license.

II.

Helms testified that on March 21, 2018, he suffered a medical emergency around midnight and became concerned for his life when his legs became stiff and he began to feel dizzy. Helms called a friend, Kaheem James, and asked for a ride to the hospital because, Helms claimed, he could not afford an ambulance or a taxi. James arrived at Helms's residence driving his girlfriend's car. James told Helms that Helms needed to drive the car. Helms agreed to do so.

Soon after, Newark Police Officer Lake initiated a traffic stop based on an equipment violation. Officer Lake discovered there was an active traffic warrant for Helms and directed him to step out of the vehicle. As Helms exited the vehicle, Officer Lake observed "a little yellow soda cap with [seventeen] envelopes of heroin [fall] off of his person[] onto the floor." Based on his training and experience, Officer Lake believed the envelopes contained heroin.

Helms testified that he never possessed the envelopes and that they did not fall from his person when he exited the vehicle.

5

The hearing officer found the testimony of Officer Lake to be detailed, credible, and reliable. The hearing officer concluded, based on Officer Lake's testimony, that there was clear and convincing evidence that Helms was in possession of CDS or imitation CDS in violation of PSL condition twelve. The hearing officer also found that there was clear and convincing evidence to support the two other violations to which Helms pleaded guilty. The hearing officer rejected Helm's claims with respect to a medical emergency.

The hearing officer recommended that Helms's PSL release status be revoked and that Helms serve a twelve-month term of incarceration. A Board panel affirmed the hearing officer's findings. Helms thereafter filed an administrative appeal to the full Board. Subsequently, the Board issued a Notice of Final Agency Decision affirming the parole revocation decision.

III.

Helms raises the following contentions for our consideration:

POINT I

THE DECISION OF THE PAROLE BOARD WAS ARBITRARY, CAPRICIOUS, OR UNREASONABLE, AND NOT SUPPORTED BY SUBSTANTIAL EVIDENCE IN THE RECORD, BECAUSE THE PAROLE BOARD FAILED TO ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT MR. HELMS SERIOUSLY OR

6

PERSISTENTLY VIOLATED HIS CONDITIONS OF PAROLE.

    A. THE EVIDENCE DOES NOT ESTABLISH THAT OFFICER LAKE CONFISCATED IMITATION CDS.

    B. THE EVIDENCE DOES NOT ESTABLISH THAT MR. HELMS POSSESSED THE CONFISCATED SUBSTANCE.

    C. [DEFENDANT'S PAROLE OFFICER] HAS NOT PRESENTED CLEAR AND CONVINCING EVIDENCE OF MR. HELMS'S SERIOUS OR PERSISTENT VIOLATION OF PSL CONDITIONS.

POINT II

THE FINAL AGENCY DECISION OF THE PAROLE BOARD WAS ARBITRARY, CAPRICIOUS, OR UNREASONABLE, AND NOT SUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD AS A WHOLE, BECAUSE THE PAROLE BOARD FAILED TO ESTABLISH THAT REVOCATION OF MR. HELMS'S PAROLE WAS DESIRABLE.

In addition, Helms raises the following points in his reply brief:

POINT I

IT WAS ARBITRARY AND CAPRICIOUS FOR THE BOARD TO FIND THAT MR. HELMS VIOLATED CONDITION [TWELVE], BECAUSE OFFICER LAKE'S TESTIMONY WAS PATENTLY NON-CREDIBLE AND NO OTHER EVIDENCE WAS

7

OFFERED TO SATISFY THE CLEAR AND
CONVINCING STANDARD OF PROOF.

POINT II

THE BOARD'S "SERIOUS AND DESIRABLE"
FINDING WARRANTS CAREFUL SCRUTINY, NOT
UNFETTERED DEFERENCE.

POINT III

THE BOARD'S FINAL DECISION DID NOT
CONSIDER, AND IN ITS LETTER BRIEF DOES
NOT ADEQUATELY ADDRESS, SEVERAL
MATERIAL FACTS.

IV.

We begin our analysis by acknowledging the legal principles governing this appeal. The standard of review is deferential to the Board. Our review is limited to evaluating whether the Board acted arbitrarily or abused its discretion. In re Vey, 272 N.J. Super. 199, 205–06 (App. Div. 1993). "The question for a [reviewing] court is '"whether the findings made could reasonably have been reached on sufficient credible evidence present in the record," considering "the proofs as a whole," with due regard to the opportunity of the one who heard the witnesses to judge of their credibility.'" Hobson v. N.J. State Parole Bd., 435 N.J. Super. 377, 388 (App. Div. 2014) (quoting Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)). The burden is on the challenging

party to show that the Board's actions were arbitrary, unreasonable, or capricious. <u>Bowden v. Bayside State Prison</u>, 268 N.J. Super. 301, 304 (App. Div. 1993).

Although most parole actions require only a preponderance of the evidence, revocation of parole must be supported by clear and convincing evidence. N.J.A.C. 10A:71-7.12(c)(1); N.J.A.C. 10A:71-7.15(c). Clear and convincing evidence persuades the fact finder "that the truth of the contention is 'highly probable.'" <u>Hobson</u>, 435 N.J. Super. at 387 (quoting <u>In re Perskie</u>, 207 N.J. 275, 290 (2011)). "Stated differently, the evidence must be sufficient to '"produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."'" <u>Ibid.</u> (quoting <u>In re Purrazzella</u>, 134 N.J. 228, 240 (1993)). The evidence must be "so clear, direct and weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." <u>In re Registrant R.F.</u>, 317 N.J. Super. 379, 384 (App. Div. 1998) (quoting <u>In re Seaman</u>, 133 N.J. 67, 74 (1993)). "Implicit in that standard is a court's obligation to reverse where the evidence, viewed in the light most favorable to the agency's decision, is inadequate to meet the standard of proof." <u>Hobson</u>, 435 N.J. Super. at 388.

Furthermore, the Board should only revoke parole for serious and persistent violations of parole.  N.J.A.C. 10A:71-7.12(a)(1); see also Hobson, 435 N.J. Super. at 391 ("Absent [a] conviction of a crime, the Board has [revocation] authority only if the parolee 'has seriously or persistently violated the conditions of his parole.'" (quoting N.J.S.A. 30:4–123.60)).  Further, the Board must determine "[w]hether [the] revocation of parole is desirable." N.J.A.C. 10A:71-7.12.

In Hobson, we noted, "[t]he Legislature did not further define the type of conduct it intended to capture within the statutory standard—'seriously or persistently violated.'  And the Board has not adopted a regulation to guide exercise of its expertise to distinguish cases in which parole should and should not be revoked."  435 N.J. Super. at 382.  Accordingly, this determination falls to the Board's "highly predictive and individualized discretionary appraisals." Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)).

## V.

### A.

We turn next to Helms's arguments concerning the Board's finding that he possessed CDS or imitation CDS.  We first examine his contention that the State

failed to prove by clear and convincing evidence that the envelopes recovered by Officer Lake contained CDS or imitation CDS.

Helms submits the circumstances of the present case are substantially identical to those we confronted in Hobson—a case where we concluded that the Board failed to prove an imitation CDS violation by clear and convincing evidence. We therefore closely examine that precedent to discern the similarities and differences between the facts in that case and the facts in the matter before us.

The panel in Hobson began its analysis by noting that, "[t]he term [imitation] is not defined and its meaning must be derived from the text of the definition of the crime." 435 N.J. Super. at 388–89. After examining the statutory text of the imitation CDS offense defined in N.J.S.A. 2C:35-11, the Hobson court looked to whether the testimony presented in that case supported a finding of imitation CDS. 435 N.J. Super. at 389. The panel determined:

> [the parole officer involved in the stop] provided the only evidence tending to establish that the green vegetative substance [the parolee] possessed was an "imitation controlled dangerous substance." [The officer] said, "[i]t was a green vegetative substance that was packaged as CDS." [The officer's] testimony, however, included no comparison of the packaging she observed in this case and the packaging of CDS. Without such a comparison, that testimony was not even adequate to prove by a preponderance of the

evidence that the substance [the parolee] had "was packaged in a manner normally used for the unlawful distribution of controlled dangerous substances or controlled substance analogs.'"

[Ibid.]

We further noted, "[t]here was no evidence that the green vegetative substance the officers claimed to find was marijuana. Neither the substance nor a photograph of the evidence was produced at the hearing." Id. at 385.

We turn now to the evidence presented in the case before us. The following exchange occurred between Officer Lake and the parole officer who questioned him at the revocation hearing:

Q: Have you had any occasion to make arrests involving CDS?

A: Yes, I have.

Q: Approximately how many arrests have you made involving CDS?

A: Probably between eight to ten.

. . . .

Q: Can you describe the circumstances that led to the stopping of the vehicle?

. . . .

A: At that time we asked Mr. Helms to step out of the vehicle. When he stepped out of the vehicle, it was like

12

a little yellow soda cap with 17 envelopes of heroin fell off of his persons onto the floor. They were -- they were labeled -- red stamp labeled overdose. And at that time we placed him under arrest for the warrant and for that CDS heroin.

. . . .

Q: All right. Now, based on your training and experience, was the physical appearance of the substance subsequently that was the same as CDS?

A: Yes.

Q: Okay.

A: It was CDS heroin.

Q: Okay. Based on your training and experience, was the substance packaged in the matter normally used for the unlawful distribution of CDS of marijuana, heroin, cocaine, et cetera?

A: Yes, CDS heroin. Yes.

The evidence presented in the case before us suffers from some of the same weaknesses that led us to reverse the final agency decision revoking Hobson's parole. As in Hobson, no evidence was presented that the suspected CDS had been tested forensically. Also as in Hobson, the State in this case did not introduce into evidence the seized envelopes or photographs of them. Officer Lake's barebones testimony, moreover, is in some respects comparable to the testimony we found inadequate in Hobson. Although here the officer did

13

compare the appearance of the substance he recovered to the appearance of CDS, he did so in a cursory and conclusory manner.[3]

Significantly, however, Lake testified that the envelopes were labeled "overdose." We believe this important fact distinguishes this case from the facts presented in Hobson. Labels by their nature serve to represent what is contained inside a package. The imprint of the brand "overdose" clearly evokes an opiate substance such as heroin. At the very least, glassine bags bearing that ominous label were meant to be seen as containing CDS. We therefore conclude that sufficient evidence was adduced to support the hearing officer's conclusion that the small envelopes contained either heroin or imitation heroin.

---

[3] We note that Officer Lake also testified as to his training, explaining he was a recent graduate from the State Police Academy where he attended a two-day class where instructors showed officers different types of drugs in person. Helms challenges the officer's training and experience in narcotics enforcement. We agree the officer's training and experience is limited. However, we deem the assessment of the appropriate weight to give to the officer's knowledge about CDS packaging based on training and experience to be a question vested in the discretion of the hearing officer and Board. Cf. LaBracio Family P'ship v. 1239 Roosevelt Ave., Inc., 340 N.J. Super. 155, 165 (App. Div. 2001) ("[T]he weight to be given to the evidence of experts is within the competence of the fact-finder."). There is no bright-line threshold of experience below which a police officer's opinion is deemed to be unreliable. We therefore decline to substitute our judgment for the hearing officer's credibility determination that was accepted by the Board.

A-2335-18T3

We add that Officer Lake was subjected to effective cross-examination, and counsel argued forcefully that the officer's training and experience was inadequate to support his conclusion. We decline in these circumstances to reject the credibility assessment made by the hearing officer and ultimately adopted by the Board. See Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974) ("[A]ppellate function is a limited one: we do not disturb the factual findings and legal conclusions of the trial judge unless we are convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." (quoting Fagliarone v. Twp. Of N. Bergen, 78 N.J. Super. 154, 155 (App. Div. 1963))).

B.

We next address Helm's contention that the Board failed to prove by clear and convincing evidence that Helms possessed the envelopes that were recovered by Officer Lake. Helms argues that he was not the owner of the car and claims he was unaware of any CDS that may have been placed in it by the owner.

Helms challenges the credibility of Officer Lake's version of events. He contends the officer did not observe the packets fall from his person but rather

found them on the ground after Helms had been arrested and secured in the police car. He argues that it strains credulity that seventeen envelopes fell out of a soda cap. He also claims the Board should have obtained and presented police body camera and dash camera recordings of the incident. He submits he is entitled to an inference that the video recordings would have supported his testimony that the envelopes did not fall from his person when he exited the car.

These contentions all share a common theme; they relate to the credibility of Officer Lake's testimony and the credibility of Helms's competing testimony. These same arguments were presented to the hearing officer. We do not believe the hearing officer abused his discretion in crediting Officer Lake's testimony. State v. Elders, 192 N.J. 224, 244 (2007) ("An appellate court 'should give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" (quoting State v. Johnson, 42 N.J. 146, 161 (1964))).

In sum, when viewed in the light most favorable to the agency's decision, Hobson, 435 N.J. Super. at 388, we conclude the hearing officer could find by clear and convincing evidence, based on the credible testimony of the officer, that Helms possessed and dropped multiple glassine bags of a white substance labeled

16                                                                              A-2335-18T3

"overdose."  In view of the deferential standard of review, especially given the hearing officer's opportunity to assess live testimony, we accept the Board's factual findings and affirm the administrative conviction relating to the possession of CDS or imitation CDS.

VI.

We turn next to Helms's contention that the curfew and driving-without-a-license violations should be excused or mitigated by reason of medical emergency.  N.J.A.C. 10A:71-7.14(c)(2)(ii) affords a parolee the right at a revocation hearing to admit that he or she committed the parole condition, "but there are substantial reasons which justified or mitigated the violations(s) and make revocation inappropriate and that the reasons are complex or otherwise difficult to develop or present."

It seems implausible to us that Helms would agree to drive his friend's car while suffering the dizziness and stiffening of the legs as he now claims.  The record before us shows that the hearing officer and Board considered the alleged medical emergency and rejected it as mitigation for the violations to which Helms pleaded guilty.  We conclude the Board did not abuse its discretion in rejecting the medical emergency defense.

A-2335-18T3

Finally, we address Helms's contention that the Board failed to establish that he "has seriously or persistently violated the conditions of his parole," N.J.S.A. 30:4–123.60(b), and that the "revocation of parole is desirable." N.J.A.C. 10A:71-7.12(c)(2). As we have noted, this is not the first time Helms's parole was revoked. Even after serving time in prison for past parole violations, he has continued to commit violations. Helms's repeated incidents of driving without a license not only posed risks to public safety but demonstrate the need to impress upon him yet again that he must comply with all PSL conditions. We therefore conclude the Board did not abuse its broad discretion in determining that revocation and another year of imprisonment is necessary and appropriate to address Helms's persistent misconduct. Acoli, 224 N.J. at 222.

To the extent we have not addressed them, any other arguments raised by Helms in this appeal lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION