NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0681-12T3


BASIM HOBSON,

     Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

     Respondent.

_____

APPROVED FOR PUBLICATION

April 29, 2014

APPELLATE DIVISION

Submitted April 2, 2014 — Decided April 29, 2014

Before Judges Grall, Nugent and Accurso.

On appeal from the New Jersey State Parole Board.

Destribats Campbell, LLC, attorneys for appellant (Raymond C. Staub, on the brief).

John J. Hoffman, Acting Attorney General, attorney for respondent (Lisa A. Puglisi, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

GRALL, P.J.A.D.

Basim Hobson appeals from a final decision of the Parole

Board (Board) revoking his release status on a mandatory five-

year term of parole supervision imposed pursuant to the No Early

Release Act (NERA), N.J.S.A. 2C:43-7.2, and setting a nine-month future eligibility term.[1] Hobson's release was revoked for violating two conditions imposed by the Board: general condition number 9, "to refrain from the use, possession or distribution of a controlled dangerous substance, controlled substance analog, or imitation controlled dangerous substance as defined in N.J.S.A. 2C:35-2 and N.J.S.A. 2C:35-11[,] as evidenced by [your] arrest in the City of Plainfield on 10/05/11 for [p]ossession of Marijuana/Hash under 50 Grams"; and one special condition, "refrain from the purchase, possession and use of any alcohol[,] as evidenced by [your] admission to the use of alcohol on 10/05/11."

The evidence was inadequate to support a finding that Hobson violated general condition number 9, and the evidence of the violation of the special condition and Hobson's record on parole was inadequate to support a finding that Hobson "seriously or persistently violated the conditions" of his

---

[1] Defendant was sentenced to one five-year term of mandatory parole supervision based on his guilty pleas to four counts of first-degree robbery, N.J.S.A. 2C:15-1, charged separately in 99-01-306-I, 98-12-603-I, 99-02-155-Z and 99-05-276-A. His sentences are concurrent with one another and, consequently, so are his mandatory terms of NERA parole supervision. Cf. State v. Friedman, 209 N.J. 102, 120-22 (2012) (holding that where NERA sentences are consecutive, then the terms of NERA parole supervision are also consecutive).

A-0681-12T3

release status, as required by N.J.S.A. 30:4-123.60(b) and N.J.S.A. 30:4-123.63(d). Accordingly, we reverse and vacate the revocation of Hobson's release status; affirm the Board's determination of violation of the special condition; and remand for reconsideration of any modification of the condition of Hobson's release warranted because of his violation of the special condition.

I

"A person who has been sentenced to a term of parole supervision and is on release status in the community pursuant to" N.J.S.A. 2C:43-7.2 is "subject to the provisions and conditions set by the appropriate [B]oard panel." N.J.S.A. 30:4-123.51b(a). That statute also gives the Board authority "to revoke the person's release status and return the person to custody for the remainder of the term or until it is determined, in accordance with regulations adopted by the [B]oard, that the person is again eligible for release . . . ." Ibid.

The Board must exercise its authority to revoke release status "in accordance with the procedures and standards" codified in N.J.S.A. 30:4-123.59 through N.J.S.A. 30:4-123.65. N.J.S.A. 30:4-123.51b(a). The statutory standards referenced permit revocation only on proof by clear and convincing evidence that the person "has seriously or persistently violated the

3                                                          A-0681-12T3

conditions," N.J.S.A. 30:4-123.60(b) and N.J.S.A. 30:4-123.63(d), or that the person has been "convicted of a crime" while released, N.J.S.A. 30:4-123.60(c); see also N.J.A.C. 10A:71-7.12(c)(1)-(2).

The Legislature did not further define the type of conduct it intended to capture within the statutory standard — "seriously or persistently violated."  And the Board has not adopted a regulation to guide exercise of its expertise to distinguish cases in which parole should and should not be revoked.

The Legislature also codified procedures for revocation that require the Board to afford persons facing revocation of release status significant procedural protections.  In addition to requiring proof by clear and convincing evidence, the Legislature has mandated notice of the alleged violation, a probable cause hearing, and a subsequent revocation hearing, at which the parolee has a right to confront his or her accusers, testify, present evidence, subpoena witnesses and have counsel appointed.  N.J.S.A. 30:4-123.62 to -123.63.

Revocation hearings are conducted by a hearing officer, who must make a record and provide reasons for his or her recommendation to a two-member Panel of the Board in writing.  N.J.S.A. 30:4-123.63.  The hearing officer's written summary is

given to the two-member Panel and the parolee's attorney, who may file exceptions with the Panel within seven days.  N.J.A.C. 10A:71-7.16.  The Panel makes its decision after reviewing the hearing officer's summary, the exceptions and the record. N.J.S.A. 30:4-123.63(d), (e); N.J.A.C. 10A:71-7.16 to -7.17B. If the Panel revokes parole it must either establish a specific release date or a future eligibility date.  N.J.S.A. 30:4-123.63(d); N.J.S.A. 30:4-123.64; N.J.A.C. 10A:71-7.17B.  The Panel also must issue a written decision stating its "particular reasons . . . and the facts relied upon," N.J.A.C. 10A:71-7.18.

Where parole is revoked, the two-member Panel's decision is appealable to the Board on several grounds.  Among the available grounds are the Panel's failure to consider material facts; its failure to document the clear and convincing evidence of serious or persistent violations; and its entry of a decision "contrary to written Board policy or procedure."  N.J.A.C. 10A:71-4.1(e)(1)-(3).  Pursuant to Rule 2:2-3(a)(2), appeal to this court is from the agency's final decision.

II

The revocation hearing in this case was conducted by a hearing officer and a record of that hearing was made.  N.J.S.A.

30:4-123.63.[2]  Hobson's attorney cross-examined Hobson's accusers, Parole Officers Dunphy and Bene.  Hobson also testified.[3]

The evidence can be summarized as follows.  Hobson was released to serve his five-year term of parole supervision at the expiration of his sentence of imprisonment on August 8, 2009.  Because of housing issues at the time of his release, Hobson was placed in Logan Hall and transferred to Delaney Hall for an alleged threat to a counselor.

After leaving Delaney Hall, Hobson had no difficulty on parole until October 5, 2011.  He completed a program at Perth Amboy Community Resource Center on December 11, 2009, and found employment before the end of that year.  Officer Dunphy was Hobson's parole officer, and by his account Hobson had been employed for most of the period between December 2009 and the

_____

[2]  In this case there was no probable cause hearing, because Hobson had requested an adjournment of the probable cause hearing and opted to proceed with the final hearing on the re-scheduled date.

[3]  The transcript does not reflect that any of the witnesses took an oath before testifying, and the Board's rules do not expressly require that witnesses be sworn.  But see Jamgochian v. N.J. State Parole Bd., 394 N.J. Super. 517, 543 (App. Div. 2007) (discussing the importance of sworn testimony and cross-examination in a hearing involving disputed allegations supporting imposition of a curfew as an additional condition of the person's community supervision), aff'd as modified, 196 N.J. 222 (2008).  Hobson does not seek reversal on that ground.

date of these violations.  Hobson had not only maintained employment but had also passed all drug and alcohol screens.  In addition, on Dunphy's numerous visits to Hobson's home, the officer had never seen any alcohol, drugs, or drug paraphernalia.

At about 8:00 p.m. on October 5, 2011, Dunphy and Bene were patrolling in Plainfield.  They saw Hobson walking down the sidewalk wearing sunglasses and a long, dark-colored coat and carrying a clear bottle that held a red liquid.  They observed Hobson stop and look into a business fronting the street.

As Dunphy customarily does when he sees a parolee on the street, he stopped to talk to Hobson.  He and Bene got out of their car and called Hobson by name.  Hobson acknowledged them, but he continued to walk a bit before stopping.

Dunphy took the bottle from Hobson's hand, spilled out the contents and discarded it.  Neither officer knew what the red liquid was, but to them, Hobson appeared to be "intoxicated." Although the officers did not explain what made them think Hobson was drunk, they both detected the odor of alcohol. Consequently, Hobson was asked if he had been drinking.  The officers claimed Hobson told them he had been, and, for that reason, Dunphy asked Hobson to sign a parole form entitled "ADMISSION OF CDS/ALCOHOL USE."  On that form, Hobson wrote: "I

was with a friend who was drinking and he gave me 2 shots of rum."

During Hobson's testimony at the hearing, he denied saying he was drunk or had been drinking. He said he told the officers the same thing that he wrote on the form — that a friend gave him rum. He further testified that he did not drink the rum, told his friend he did not want it and left it on his friend's kitchen counter.

The officers also testified about the circumstances supporting the charge of drug possession. They found the substance they suspected to be marijuana after Hobson admitted drinking and as they were walking with Hobson toward their car. At that point, Hobson put his hand in his coat pocket. Dunphy placed his hand on Hobson's wrist and directed Hobson to take his hand from his pocket. As Hobson complied, Dunphy saw a plastic bag that contained several smaller bags of a "green vegetative substance," which Dunphy seized.

There was no evidence that the green vegetative substance the officers claimed to find was marijuana. Neither the substance nor a photograph of the evidence was produced at the hearing.

Dunphy had filed a criminal complaint charging Hobson with possession of less than fifty grams of marijuana and gave the

A-0681-12T3

evidence to the Plainfield police department. He did not, however, get a receipt for the evidence. Neither officer knew if the Plainfield police had the substance tested, and neither testified to detecting an odor of marijuana. Bene, however, testified that the substance was "packaged as CDS."

When the parole revocation hearing was held, Hobson had not been prosecuted. Hobson claimed that the charge had been downgraded and sent to the municipal court for disposition. In addition, Hobson denied possessing any green vegetative substance on October 5, 2011.

Hobson also testified in mitigation. He described his activities, which at times included two jobs and caring for an infirm relative. He also discussed his plans to attend school, obtain a commercial driver's license and care for his son, who was born in June 2011.

Considering the foregoing evidence and Hobson's presentence reports prepared years ago, the hearing officer determined that there was clear and convincing evidence supporting the conclusion that Hobson violated the conditions as charged. With respect to the charge of alcohol consumption in violation of the special condition of Hobson's release, the hearing officer's finding rested on the admission form Hobson signed. As proof of the violation of the general condition pertinent to drug

possession, the hearing officer relied upon Bene's testimony that the vegetative substance was "packaged as marijuana" and that the condition addressed "imitation CDS" as well as "CDS."

As previously noted, where revocation is based on violation of a condition of release, the statute requires proof that the parolee "has seriously or persistently violated the conditions of his parole." N.J.S.A. 30:4-123.60. The hearing officer did not provide any explanation for her conclusion that Hobson qualified for revocation under that standard. She considered Hobson's good record since his release from prison in August 2009 as warranting a reduction of the presumptive date of his next parole eligibility.

The two-member Panel's decision does not address the statutory standard either. It simply states that the Panel "reviewed" the hearing officer's summary, "concur[red] with the findings of fact," and "adopted the recommendation" of the hearing officer on "disposition."

The Board also failed to explain how the evidence in this case established that Hobson had "seriously or persistently violated the conditions of his parole." N.J.S.A. 30:4-123.60. The Board summarized the objections Hobson's attorney raised on the administrative appeal, noted that the attorney had raised the same arguments before the Panel and, despite the Panel's

A-0681-12T3

cursory written decision, the Board concluded that the Panel considered those objections and the entire record in making its decision.

Without further explanation, the full Board stated its conclusions:

> The full Board finds that the Panel reviewed and considered the full circumstances surrounding your client's violations of mandatory parole supervision as well as each of the mitigating factors mentioned in the hearing officer's summary.  The full Board finds no evidence to support your claim that the Panel failed to consider material facts or failed to demonstrate that revocation is desirable.  The full Board concurs with the Panel's determination that there is clear and convincing evidence that your client seriously violated parole conditions and that revocation is desirable.  Therefore, the full Board finds your contentions to be without merit.
>
> . . . .
>
> Finally, the full Board finds that, other than your own interpretation of information that is already part of the record, you have not identified any written Board policy or procedure to which the Panel's decision is contrary.  Therefore, the Board finds your contention to be without merit.
>
> . . . Additionally, in assessing your client's case, the full Board concurs with the determination of the . . . Panel that clear and convincing evidence exists that your client has seriously violated the conditions of parole and that revocation is desirable. . . .

A-0681-12T3

III

The record does not contain clear and convincing evidence of Hobson's violation of general condition number 9. That standard of proof requires evidence that persuades the fact finder "that the truth of the contention is 'highly probable.'" In re Perskie, 207 N.J. 275, 290 (2011) (quoting 2 McCormick on Evidence § 340, at 487 (Broun ed., 6th ed. 2006)). Stated differently, the evidence must be sufficient to "'produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" In re Purrazzella, 134 N.J. 228, 240 (1993) (quoting Aiello v. Knoll Golf Club, 64 N.J. Super. 156, 162 (App. Div. 1960)). Even "evidence that is uncontroverted may nonetheless fail to meet the elevated clear and convincing evidence standard." In re Perskie, supra, 207 N.J. at 290.

The Board reminds us of the deference a reviewing court owes to an agency's factual findings — a standard that is well-established and must be followed. The question for a court is "'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one who heard the witnesses to judge of their credibility." Close v. Kordulak Bros., 44 N.J. 589, 599 (1965)

A-0681-12T3

(quoting State v. Johnson, 42 N.J. 146, 162 (1964)). Implicit in that standard is a court's obligation to reverse where the evidence, viewed in the light most favorable to the agency's decision, is inadequate to meet the standard of proof.

Hobson was charged with failing to "refrain from the use, possession or distribution of a controlled dangerous substance, controlled substance analog or imitation controlled dangerous substance as defined in N.J.S.A. 2C:35-2 and N.J.S.A. 2C:35-11[,] as evidenced by [your] arrest in the City of Plainfield on 10/05/11 for [p]ossession of Marijuana/Hash under 50 Grams." Even if we were to assume that the officers' testimony, without any other evidential support, was adequate to establish defendant's possession of several small bags of a green vegetative substance by clear and convincing evidence, there was absolutely no evidence supporting a finding that the substance was marijuana or some other controlled dangerous substance. Accordingly, Hobson's violation of this condition based on possession of marijuana cannot be sustained.

The evidence was also inadequate to permit a reasonable finder of fact to conclude that Hobson possessed an imitation

controlled dangerous substance as defined in <u>N.J.S.A.</u> 2C:35-11.[4]

<u>N.J.S.A.</u> 2C:35-11 defines the crime of distributing or possessing "imitation controlled dangerous substances."  The term is not defined and its meaning must be derived from the text of the definition of the crime.  In pertinent part, <u>N.J.S.A.</u> 2C:35-11 provides:

> a. It is unlawful for any person to distribute or to possess or have under his control with intent to distribute any substance which is not a controlled dangerous substance or controlled substance analog:
>
> (1) Upon the express or implied representation to the recipient that the substance is a controlled dangerous substance or controlled substance analog; or
>
> (2) Upon the express or implied representation to the recipient that the substance is of such nature, appearance or effect that the recipient will be able to distribute or use the substance as a controlled dangerous substance or controlled substance analog; or
>
> (3) Under circumstances which would lead a reasonable person to believe that the substance is a controlled dangerous substance or controlled substance analog.
>
> Any of the following shall constitute prima facie evidence of such circumstances:

---

[4]  The condition also refers to the definitions in <u>N.J.S.A.</u> 2C:35-2, but the statute does not define the term "imitation controlled dangerous substance."

(a) The substance was packaged in a manner normally used for the unlawful distribution of controlled dangerous substances or controlled substance analogs.

(b) The distribution or attempted distribution of the substance was accompanied by an exchange of or demand for money or other thing as consideration for the substance, and the value of the consideration exceeded the reasonable value of the substance.

(c) The physical appearance of the substance is substantially the same as that of a specific controlled dangerous substance or controlled substance analog.

. . . .

Bene provided the only evidence tending to establish that the green vegetative substance Hobson possessed was an "imitation controlled dangerous substance." She said, "[i]t was a green vegetative substance that was packaged as CDS." Her testimony, however, included no comparison of the packaging she observed in this case and the packaging of CDS. Without such a comparison, that testimony was not even adequate to prove by a preponderance of the evidence that the substance Hobson had "was packaged in a manner normally used for the unlawful distribution of controlled dangerous substances or controlled substance analogs."

For the foregoing reasons, the Board's finding that Hobson violated general condition number 9 is reversed and the charge is vacated.

IV

In contrast, there was adequate evidence to support a finding, by clear and convincing evidence, that Hobson consumed alcohol. Giving deference to the hearing officer's ability to assess credibility, the officers' testimony about detecting the odor of alcohol and Hobson's oral admission, coupled with the admission form Hobson signed, was adequate to prove that violation by clear and convincing evidence.

That does not end the inquiry, however. As previously noted, the Board may revoke the release status of a parolee serving a term of mandatory parole supervision required by NERA only if the Board finds, by clear and convincing evidence, that the parolee "has seriously or persistently violated the conditions of his parole." N.J.S.A. 30:4-123.60. Obviously, our reversal of the Board's finding on general condition number 9 changes the analysis of the question as to whether the standard for revocation of parole is met.

Ordinarily, we would remand so that the Board, which is charged with the responsibility, could consider whether the violation of the special condition requiring Hobson to refrain

from the consumption of alcohol meets the statutory standard for revocation of release status. This record, however, does not permit that determination. It establishes nothing other than the fact that on one occasion Hobson drank two shots of rum. Given Hobson's undisputedly consistent record of refraining from the use of alcohol during the two-year period following his release and maintaining employment, he cannot be found to have "seriously" violated a condition of his parole under the plain meaning of that word. Accordingly, we direct the Board to promptly schedule Hobson's release subject to such conditions as it may deem appropriate.

Although it is not necessary to our decision, in the interest of avoiding repetition, it is appropriate to advise the Board that even if the evidence were adequate to support this revocation, we would have remanded for supplementation of the Board's decision. Both the Panel's decision and the Board's decision are inadequate in that they offer no explanation for the determination that Hobson "seriously violated" conditions of his release status.

This court defers to an agency decision if it is supported by the record and not "arbitrary, capricious or unreasonable." In re Taylor, 158 N.J. 644, 657 (1999) (internal citation omitted). "[E]xercise of such deference is premised on our

confidence that there has been a careful consideration of the facts in issue and appropriate findings addressing the critical issues in dispute."  Bailey v. Bd. of Review, 339 N.J. Super. 29, 33 (App. Div. 2001).  "[I]t is a fundamental of fair play that an administrative judgment express a reasoned conclusion. A conclusion requires evidence to support it and findings of appropriate definiteness to express it."  N.J. Bell Tel. Co. v. Communications Workers of America, 5 N.J. 354, 375 (1950).

The Legislature did not grant the Board unbridled discretion to revoke the release status of a person subject to a term of NERA parole supervision.  Absent conviction of a crime, the Board has that authority only if the parolee "has seriously or persistently violated the conditions of his parole." N.J.S.A. 30:4-123.60.  A decision of a Panel or Board revoking parole without an articulation of the basis for revocation under the statutory standard has an appearance of unfairness and caprice that not only invites but requires careful scrutiny by a reviewing court.  For the same reason, the Panel and Board must explain its reasons for selecting a release date or a future eligibility date as well.  Similarly, in a case where conditions of release are altered or the sanction of lost commutation time is ordered, those determinations should be explained as well.

A-0681-12T3

Reversed and remanded for further proceedings in conformity with this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0681-12T3