**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4037-19

TYREESE EVANS, a/k/a
TAJ EVANS,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

Submitted April 13, 2021 – Decided May 5, 2021

Before Judges Yannotti and Natali.

On appeal from the New Jersey State Parole Board.

Tyreese Evans, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Suzanne M. Davies, Deputy Attorney General, on the brief).

PER CURIAM

Tyrese Evans appeals from a May 27, 2020 New Jersey State Parole Board (Board) final agency decision revoking his mandatory supervision status and establishing a twelve-month parole eligibility term.  We affirm.

Evans pled guilty to conspiracy to commit robbery, aggravated manslaughter, and unlawful possession of a weapon.  He was sentenced to an aggregate ten-year prison term with an eighty-five percent period of parole ineligibility and a five-year period of mandatory parole supervision under the No Early Release Act, N.J.S.A. 2C:43-7.2.  One of the conditions of Evans' parole barred him "from the purchase, use, possession, distribution, or administration of any narcotic drug, controlled dangerous substance [(CDS)], or [CDS] analog" or "imitation [CDS] or imitation [CDS] analog."

After completing the custodial portion of his sentence, Evans was arrested while on parole by Officer Shawn Dunphy for aggravated assault.  During a search incident to his arrest, Officer Dunphy seized a plastic bag located in Evans' pocket containing "twenty pills of suspected [Ecstasy/MDMA[1]], with varying colors and stamp[ed] images on them."

---

[1]  MDMA, or methylenedioxymethamphetamine, is a CDS commonly known by the street names Ecstasy or Molly.

A-4037-19

As a result of his arrest, the Board commenced parole revocation proceedings against Evans pursuant to N.J.S.A. 30:4-123.62. He was also charged with possession of a CDS contrary to N.J.S.A. 2C:35-10(a)(1). Evans was notified of the parole revocation hearing, declined his right to counsel, and proceeded without legal representation.

At the hearing, Officer Dunphy conceded that he had not obtained laboratory results to confirm that the pills were illegal drugs but stated "based on the[ir] appearance" he believed they were either actual or imitation CDS. Officer Dunphy recommended the Board revoke Evans' parole and explained:

> [Evans] . . . seriously violated the conditions of his mandatory supervision, specifically, [Evans] has been charged with committing a new aggravated assault and was found to be in possession of illegal narcotics. [Evans'] behavior makes him a threat to the community and unsuitable for community supervision.

Evans disputed that the pills were illegal. He testified that he does not use drugs, and stated he never provided "dirty urine" during his two years of mandatory parole supervision. Finally, he appeared to disclaim ownership of the pills as he stated he changed out of his work clothes and put on his brother's pants prior to his arrest.

The hearing officer concluded that there was clear and convincing evidence that Evans was in possession of illegal narcotics in violation of his

3

parole. He found the testimony of Officer Dunphy to be detailed, credible, reliable, and supported by his training and experience. Conversely, the hearing officer determined that Evans' testimony lacked overall credibility and reliability. On July 10, 2019, a Board panel affirmed the hearing officer's decision.

Evans filed an administrative appeal. He argued that the panel's decision should be reversed because its finding that he possessed an illegal substance was unsupported by confirmatory laboratory results. The panel agreed, vacated the July 10, 2019 decision, and scheduled a de novo probable cause hearing. It did not appear to address that condition of Evans' parole which prohibited him from possessing imitation drugs.

Evans retained counsel, waived the probable cause hearing, and decided to proceed directly to a second parole revocation hearing. At that hearing, Officer Dunphy testified again and explained that a condition of Evans' parole prohibited him from possessing not only actual CDS, but imitation or analog drugs as well.

Officer Dunphy conceded that the seized pills were not tested. He also did not introduce the pills at the hearing or provide photographs of the seized contraband. Instead, Officer Dunphy stated that based on his training and

experience, "the substance found in [Evans'] pocket had the appearance of Ecstasy/MDMA pills."

The hearing officer recommended revocation of Evans' mandatory supervision and the imposition of a twelve-month eligibility term. He noted that a condition of Evans' parole prohibited him from possessing not only actual CDS, but analog or imitation illegal drugs. The hearing officer found Officer Dunphy's testimony credible and reliable and concluded based on his testimony "that clear and convincing evidence . . . exist[ed] to believe that [Evans] was in possession of imitation CDS," and therefore violated a condition of his parole.

The hearing officer also explained that although Evans was "working, attending school, maintaining a stable residence, and testing negative for substances," his "positive behavior on parole, [did] not negate the commission of the violation." Finally, the hearing officer found that Evans' violation was serious, and revocation of his parole was a necessary consequence of his actions. On February 19, 2020, a Board panel accepted the hearing officer's factual findings and recommendations.

On May 27, 2020, the Board issued a final notice of agency decision affirming the panel's February 19, 2020 decision. In a written decision, the Board determined that the panel "reviewed and considered all relevant facts

5

pertaining to [Evans'] violation of the condition of [his] mandatory supervision"

and concluded that "clear and convincing evidence exist[ed] that [Evans had]

seriously violated the condition of mandatory supervision and revocation of

[his] mandatory supervision status [was] desirable."

This appeal followed in which Evans raises the following points for our

consideration:

> I. THE ALLEGATION LODGED AGAINST APPELLANT SHOULD NOT HAVE BEEN SUSTAINED BY THE PAROLE BOARD DUE TO THE DISQUALIFICATION OF THE PAROLE OFFICER TO DELINEATE AND CORROBORATE HIS TESTIMONY.

> II. THE AGENCY'S FAILURE TO ADDRESS THE MERITS OF APPELLANT'S APPEAL RENDERS THE DECISION TO REVOKE PAROLE ARBITRARY, CAPRICIOUS AND A VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY THE U.S. CONSTITUTION['S] [FOURTEENTH] AMENDMENT . . . [AND] N.J. CONST. ART. I, PARA. 8.

We have carefully considered Evans' arguments in light of the record and

controlling legal principles. We affirm, substantially for the reasons expressed

in the Board's written decision, which is supported by sufficient credible

evidence in the record as a whole. R. 2:11-3(e)(1)(D). We add the following comments.

Our review of a Board's decision is limited. Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div. 2004). We "must determine whether the factual finding could reasonably have been reached on sufficient credible evidence in the whole record." Ibid. (citing Trantino v. N.J. State Parole Bd., 166 N.J. 113, 172 (2001)). The appellant has "[t]he burden of showing that an action was arbitrary, unreasonable or capricious." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002).

Applying these well-established principles, we discern no basis to overturn the Board's final decision. The Board considered the relevant facts and submissions in revoking Evans' mandatory supervision status and establishing a twelve-month parole eligibility term. The Board's determination is amply supported by the record and consistent with controlling law. Its decision was not arbitrary, capricious, or unreasonable.

Primarily relying on Hobson v. N.J. State Parole Board., 435 N.J. Super. 377 (App. Div. 2014), Evans argues that the Board's decision was arbitrary and capricious because Officer Dunphy failed to corroborate his testimony with forensic testing or other evidence to establish that the seized pills were actual or

A-4037-19

imitation CDS. He further contends that the Board's decision violated his due process rights. We are not persuaded by either of these arguments.

"Drawing on the diverse backgrounds of its members, the Parole Board makes 'highly predictive and individualized discretionary appraisals.'" Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)). The Board may revoke parole and return a parolee to custody when the parolee "seriously or persistently violate[s] the conditions of . . . parole." N.J.S.A. 30:4-123.60(b). We have recognized that "[t]he Legislature [has] not further define[d] the type of conduct it intended to capture within the statutory standard—'seriously or persistently violated.' And the Board has not adopted a regulation to guide exercise of its expertise to distinguish cases in which parole should and should not be revoked." Hobson, 435 N.J. Super. at 382.

By any measure, Evans' parole violation was serious. He failed to abide by an important parole condition prohibiting his possession of analog or imitation drugs. The evidence was clear and convincing that he was non-compliant with that condition.

We find Evans' reliance on Hobson misplaced as that case is factually distinguishable. In Hobson, we concluded that the Board failed to prove an

A-4037-19

imitation CDS violation by clear and convincing evidence. After analyzing the statutory text of the imitation CDS offense defined in N.J.S.A. 2C:35-11, we examined the testimony presented to determine whether it supported a finding of a parole violation for possession of an imitation CDS. 435 N.J. Super. at 389. We explained:

> [The parole officer involved in the stop] provided the only evidence tending to establish that the green vegetative substance [the parolee] possessed was an "imitation [CDS]." [The officer] said, "[i]t was a green vegetative substance that was packaged as CDS." [The officer's] testimony, however, included no comparison of the packaging she observed in this case and the packaging of CDS. Without such a comparison, that testimony was not even adequate to prove by a preponderance of the evidence that the substance [the parolee] had "was packaged in a manner normally used for the unlawful distribution of [CDS] or [CDS] analogs."
>
> [Ibid.]

We further noted, "[t]here was no evidence that the green vegetative substance the officers claimed to find was marijuana" and that "[n]either the substance nor a photograph of the evidence was produced at the hearing." Id. at 385.

We acknowledge that the evidence presented in the case before us suffers from some of the same infirmities as in Hobson. For example, Officer Dunphy failed to present proof that the suspected CDS were forensically tested. Also,

9

as in <u>Hobson</u>, the parole officer did not introduce into evidence photographs of the seized contraband.

Significantly, however, unlike the testimony in <u>Hobson</u>, Officer Dunphy relied on his training and experience and compared the seized pills to the appearance of illegal drugs. It was reasonable for the Board to rely on this testimony, which it deemed credible, when determining if Evans possessed an imitation CDS in violation of his parole. Indeed, under N.J.S.A. 2C:35-11(a)(3), it is a violation of the imitation CDS statute if "circumstances exist which would lead a reasonable person" to believe the substance is an illegal drug. "Prima facie evidence of such circumstances" exists when the facts establish that "[t]he physical appearance of the substance is substantially the same as that of a specific [CDS] or [CDS] analog." N.J.S.A. 2C:35-11(a)(3)(c).

We also find without merit Evans' claims that Officer Dunphy's failure to test the pills rendered the Board's decision arbitrary and capricious, and that its decision violated his procedural due process rights. First, the Board's actions comported with all procedural due process requirements. Evans was provided notice of both revocation hearings, and the right to counsel. An impartial hearing officer considered the parties' evidence, the applicable law, and issued

10

a thorough written decision, which was reviewed by a separate panel and then the Board.

Second, throughout the administrative proceedings, the hearing officer, panel, and the Board thoroughly considered, and ultimately rejected, all of Evans' factual and legal arguments. In view of our deferential standard of review, especially given the hearing officer's opportunity to assess the live testimony of Officer Dunphy, we accept the Board's factual findings and affirm the administrative conviction.

To the extent we have not addressed any of Evans' remaining arguments it is because we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-4037-19