**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1227-23

MICHAEL LYGA,

      Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

      Respondent.

_____

Submitted June 4, 2025 – Decided June 23, 2025

Before Judges Rose and DeAlmeida.

On appeal from the New Jersey State Parole Board.

Jennifer N. Sellitti, Public Defender, attorney for appellant (John P. Flynn, Assistant Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Hilary Cohen, Deputy Attorney General, on the brief).

PER CURIAM

Michael Lyga, a State prison inmate, appeals from a November 22, 2023 final agency decision by the New Jersey State Parole Board revoking parole and ordering Lyga to serve a sixteen-month prison term for violating conditions of parole supervision for life (PSL). Because we conclude the Board's decision "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D), we affirm.

I.

We summarize the pertinent facts and events from the record before the Board. In 2008, Lyga pled guilty to second-degree luring, N.J.S.A. 2C:13-6, and fourth-degree obstruction, N.J.S.A. 2C:29-1(b). The record reflects "Lyga used the [i]nternet to solicit sex from an undercover police officer posing as a 13-year-old female." Lyga thereafter was sentenced to an aggregate five-year prison term with PSL pursuant to Megan's Law, N.J.S.A. 2C:43-6.4. Lyga acknowledged, in writing, twenty-five general conditions of PSL.[1] Those conditions included "report[ing] to the assigned parole officer as instructed"; and "refrain[ing] from initiating, establishing[,] or maintaining contact with any minor" or "attempting to [do so]."

---

[1] The two-page form signed by Lyga is undated. Ordinarily, the form is executed at the plea hearing.

Within days of Lyga's release from prison in April 2012, Lyga violated the conditions of PSL by failing to report. Lyga was arrested on a parole warrant in August 2012, and charged with resisting arrest, aggravated assault on a law enforcement officer, and absconding from parole. The Board revoked PSL in November 2012. Apparently convicted of resisting arrest, Lyga was sentenced to a nine-month jail term in August 2013.

Also in August 2013, Lyga was placed on PSL for a second term. Lyga was released from prison in February 2014. Within days, Lyga absconded from supervision. Following arrest on March 25, 2014, Lyga was released on supervision for a third and final term on May 26, 2015. That same day – for the first time since Lyga's 2012 release – Lyga reported to the parole office.

From 2015 to 2023, Lyga remained under parole supervision. During that time frame, Lyga's housing was unstable. Lyga resided in shelters and extended-stay motels. Parole referred Lyga for psychological assessments. Lyga participated in mental health programs. In June 2021, Lyga was discharged from sex offender therapy.

In January 2019, new and special conditions prohibiting internet access and use of public libraries were imposed, following a report to Lyga's parole officer that Lyga frequently used the public computers in the same library where

3

the initial criminal offense was committed.[2]  In September 2022, the condition was modified, permitting Lyga internet access provided Lyga gave advance notice to the parole officer "prior to purchasing, possessing[,] or utilizing any computer and/or device that permits access to the [i]nternet."  Lyga also "agree[d] to permit the monitoring of [Lyga's] computer."

On March 9, 2023, Lyga's supervision was reassigned to Parole Officer Steven Purciello.  The following week, Purciello and another officer made an unannounced visit to Lyga's room at the Roxbury Motel.  Lyga denied owning a cell phone but the officers observed a phone case.  Lyga denied "ha[ving] any internet-capable devices."  Motel staff advised Lyga's bill had not been paid in more than two years.  Lyga's former attorney confirmed Lyga likely would be evicted, and acknowledged he contacted Lyga via email and cell phone.

A subsequent search of Lyga's room revealed a cell phone that Lyga acknowledged using.  Officers searched the phone for parole violations and found Lyga utilized social media accounts.  Lyga sent messages to persons who "appear[ed] to be minors" and stated "you're pretty, you look lovely, Lily, you

---

[2]  At some point in 2019, Lyga was convicted of third-degree failure to register a change of address within ten days, N.J.S.A. 2C:7-2(d)(1), and sentenced to a probationary term.  Although Lyga's probation officer recommended revocation of supervision, the hearing officer continued Lyga on parole and imposed GPS monitoring.

are pretty, and thanks for following me. I'm following you back." Officers also found an electronic tablet in Lyga's residence. A forensic examination of Lyga's phone later revealed more than one hundred "pictures of what appeared to be preschool to adolescent teenage females via the social media apps."

Purciello permitted Lyga to keep the devices but "instructed Lyga to report to District Office 1 on Wednesday, March 22[], and to bring [the] smartphone." Lyga "d[id] not know how [Lyga] c[ould] get there." Purciello explained Lyga "ha[d] a week to figure it out" and could download a ridesharing application.

On March 21, Lyga called Purciello expressing uncertainty about reporting as directed because Lyga was opposing the hotel's eviction application and attempting to find another residence. The following day, Lyga called Purciello stating Lyga's belongings were discarded and the phone was stolen and, as such, Lyga could not report that day as directed. Purciello instructed Lyga to report the next day, on March 23.

Lyga failed to report or contact Purciello on March 23. A parole warrant issued and Lyga was arrested. Officers seized the same phone and tablet observed in Lyga's former residence, $1,000 in cash, a business card for a taxi service, and other property.

Parole authorities initiated the process of revoking parole, alleging Lyga violated: (1) general condition A2 by "fail[ing] to report to District Office 1 on March 22[], 2023, March 23[], 2023, or any date thereafter"; (2) general condition B1 by "fail[ing] to refrain from initiating, establishing, or maintaining contact with any minor"; (3) general condition B2 by "fail[ing] to refrain from attempting to initiate contact with any minor"; and (4) overlapping special conditions by failing to notify Purciello of Lyga's acquisition and use of internet-access devices. Lyga waived a probable cause hearing and proceeded directly to a final revocation hearing.

Represented by counsel, at the outset of the one-day hearing, Lyga pled not guilty to all three general conditions and guilty-with-an-explanation to the special conditions. Purciello testified consistently with the facts summarized above.

Lyga testified and claimed the phone and tablets were gifts. Because Lyga never asked the ages of the people Lyga communicated with via social media, Lyga denied knowledge of their ages. After the close of all evidence, Lyga's counsel emphasized his client's "limited educational background," "documented mental health history," and "mild intellectual disability." Counsel further argued Lyga actively communicated with Purciello about the missed appointment and

6

it was unreasonable for Lyga to report within one week of Purciello's instructions, in view of Lyga's housing and transportation issues.

In his written decision that followed, the hearing officer summarized the evidence adduced at the hearing and the arguments of Lyga's attorney. Crediting Purciello's testimony, the hearing officer found clear and convincing evidence Lyga violated general condition A2, general condition B1, and the special conditions. However, the hearing officer found insufficient evidence was presented to sustain the general condition B2 violation.

The hearing officer recommended revocation of Lyga's PSL release status and imposition of a sixteen-month term of incarceration. A two-member Board panel affirmed the hearing officer's findings and sanction. Lyga thereafter filed an administrative appeal to the full Board. In its November 22, 2023 decision, the Board affirmed the parole revocation decision.

Represented by assigned counsel on appeal, Lyga raises the following contentions for our consideration:

POINT I

THE BOARD'S DECISION TO REVOKE LYGA'S PAROLE WAS ARBITRARY AND CAPRICIOUS, RESTED ON INCORRECT FACTS, AND FAILED TO ESTABLISH THAT REVOCATION WAS DESIRABLE.

7

A. The Board's finding that Lyga seriously and persistently violated a condition of parole by failing to report must be reversed because it rested on the parole officer's factual misrepresentation, and because the requirement to report on March 22 and March 23 was fundamentally unreasonable.

B. The Board failed to prove that revoking parole was desirable and was the least restrictive appropriate response to address Lyga's failure to notify the parole officer prior to possessing a smartphone and messaging Instagram accounts.

II.

Our review of an agency's decision is circumscribed and deferential. See In re Stallworth, 208 N.J. 182, 194 (2011). We therefore accord considerable deference to the Parole Board and its expertise in parole matters. See Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div. 2004). "'Parole Board decisions are highly individualized discretionary appraisals,' and should only be reversed if found to be arbitrary or capricious." Id. at 179-80 (citations omitted) (quoting Trantino v. N.J. State Parole Bd., 166 N.J. 113, 173 (2001)). We "must determine whether the factual finding could reasonably have been reached on sufficient credible evidence in the whole record." Id. at 179 (citing Trantino, 166 N.J. at 172). In making this determination, we "may not substitute [our] judgment for that of the agency, and an agency's exercise of its statutorily-delegated responsibilities is accorded a strong presumption of reasonableness."

8

McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002) (citations omitted).  Accordingly, "[t]he burden of showing that an action was arbitrary, unreasonable or capricious rests upon the appellant."  Ibid.

Pursuant to N.J.A.C. 10A:71-7.12(c):

> If the parolee has not been convicted of a crime committed while on parole, the purpose of the revocation hearing shall be to determine:
>
> 1.  Whether, by clear and convincing evidence, the parolee has seriously or persistently violated the conditions of parole; and
>
> 2.  Whether revocation of parole is desirable.

Accordingly, although most parole actions require only a preponderance of the evidence, revocation of parole must be supported "by clear and convincing evidence" that "the parolee has seriously or persistently violated" parole conditions.  N.J.A.C. 10A:71-7.12(c)(1); see also Hobson v. N.J. State Parole Bd., 435 N.J. Super. 377, 387 (App. Div. 2014).  Clear and convincing evidence "persuades the fact finder 'that the truth of the contention is "highly probable."'" Hobson, 435 N.J. Super. at 387 (quoting In re Perskie, 207 N.J. 275, 290 (2011)). "Stated differently, the evidence must be sufficient to 'produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought

to be established.'" Ibid. (quoting In re Purrazzella, 134 N.J. 228, 240 (1993)) (internal quotation marks omitted). "Implicit in that standard is a court's obligation to reverse where the evidence, viewed in the light most favorable to the agency's decision, is inadequate to meet the standard of proof." Id. at 388.

As we noted in Hobson, "[t]he Legislature did not further define the type of conduct it intended to capture within the statutory standard—'seriously or persistently violated.'" Id. at 382. Nor did the Board "adopt[] a regulation to guide exercise of its expertise to distinguish cases in which parole should and should not be revoked." Ibid. Accordingly, this determination falls with the Board's "highly 'individualized discretionary appraisals.'" Trantino, 166 N.J. at 173 (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)).

In addition, under N.J.A.C. 10A:71-7.12(c)(2), the Board must determine "[w]hether revocation of parole is desirable." Notably absent from this subparagraph is the "clear and convincing" requirement set forth in the preceding paragraph.

Against these guiding principles and the record before the Board, we have considered Lyga's arguments and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following brief comments.

In summary, the record contains clear and convincing evidence supporting the Board's determination Lyga seriously and persistently violated PSL. Lyga possessed internet-capable devices without notifying the parole officer or enabling monitoring software. Lyga contacted a middle school student through social media and exchanged increasingly intimate communications with her, including asking to be her boyfriend and expressing love for her.

Moreover, the record contains clear and convincing evidence Lyga failed to report and the excuses made were not credible, as the hearing officer found. Although travel to the parole office would have been costly, the evidence adduced at the hearing established Lyga had recently taken a taxi to the movies and had more than $1,000 in cash when arrested. We discern no error in the Board's finding.

We also reject Lyga's belated contention that the Board failed to determine whether revocation is reasonable by clear and convincing evidence. N.J.A.C. 10A:71-7.12(c)(2) contains no such requirement. There is ample support in the record for the Board's decision, including Lyga's long history of parole violations and surreptitious internet use to contact a minor. We therefore conclude the Board's decision was not arbitrary, capricious, or unreasonable. Trantino, 166 N.J. at 173. Pursuant to our limited standard of review,

Stallworth, 208 N.J. at 194, we affirm substantially for the reasons expressed in the Board's well-reasoned final decision, which "is supported by sufficient credible evidence on the record as a whole," R. 2:11-3(e)(1)(D).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1227-23