**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0152-24

MICHAEL SANDERS,

     Appellant,

v.

NEW JERSEY STATE PAROLE
BOARD,

     Respondent.

_____

Submitted October 29, 2025 – Decided December 19, 2025

Before Judges Gummer and Paganelli.

On appeal from the New Jersey State Parole Board.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Laura B. Lasota, Deputy Public Defender II, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Janet Greenberg Cohen, Assistant Attorney General, of counsel; Andrew Spevack, Deputy Attorney General, on the brief).

PER CURIAM

Michael Sanders appeals from the final agency decision of the New Jersey State Parole Board (Parole Board) revoking his parole supervision for life (PSL) status and sentencing him to a sixteen-month term of incarceration. Because we conclude Sanders fails to establish the Parole Board's decision was arbitrary, capricious, or unreasonable, we affirm.

We glean the facts and procedural history from the Parole Board record. In December 2011, Sanders pleaded guilty to: second-degree sexual assault, N.J.S.A. 2C:14-2(c)(4); fourth-degree criminal sexual assault, N.J.S.A. 2C:14-3(b); and third-degree endangering the welfare of a fourteen-year-old female, N.J.S.A. 2C:24-4(a). In April 2012, he was sentenced to prison for five years flat on the second and third-degree crimes and eighteen months on the fourth-degree crime to run concurrently to the five-year term. He was also sentenced to PSL for all crimes.

Sanders completed his term of incarceration in November 2014. Since his release, Sanders's PSL "status ha[d] been revoked on two . . . occasions and continued on three . . . occasions." In June 2023, Sanders was again continued on PSL subject to the following conditions:

> PSL General Condition #13 — Refrain from the unlawful purchase, use, possession, distribution, or administration of the following, which shall not apply

A-0152-24

to a controlled dangerous substance [(CDS)] prescribed by a physician:

> i. Any narcotic drug, [CDS] , or controlled substance analog as defined at N.J.S.A. 2C:35-2 or imitation [CDS] or imitation controlled dangerous analog as defined at N.J.S.A. 2C:35-11, other than possession of marijuana or hashish in violation of N.J.S.A. 2C:35-10.a(3), and distribution of marijuana or hashish in violation of N.J.S.A. 2C:35-5.b(12); or

> ii. Any paraphernalia as defined at N.J.S.A. 2C:36-1 related to such substances, other than if used, or intended to be used, for marijuana or hashish.

> PSL Special Condition — Comply with the conditions of and successfully complete the Program for Returning Offenders with Mental Illness Safely and Effectively (PROMISE) at [Volunteers of America (VOA)] Liberty for 90 to 180 days.

> [(Capitalization modified).]

As of August 2023, Sanders had completed the treatment phase of PROMISE at the VOA. However, on August 24, 2023, he was allegedly "found in possession of synthetic cannabinoids (K2) upon his return to the [VOA] from a dental visit." Because the infraction was considered serious, Sanders was discharged from the program. A parole warrant was issued, and Sanders was arrested.

3

On November 8, 2023, a hearing officer from the Parole Board District Office conducted a probable cause hearing. The Division of Parole presented testimony from Senior Parole Officer Jennifer Pfeffer and Senior Parole Officer Michael Sass. Officer Pfeffer testified that she had observed the seized item "to be a green vegetative sweet-smelling substance, that, based on her training and experience," she was able to identify as K2. Further, the testimony revealed that Sanders admitted, to Officers Pfeffer and Sass, that he had brought K2 to the facility. The VOA discharge summary was entered into evidence. The testimony also revealed the item seized had not been tested. The hearing officer found:

> Probable cause . . . exists to believe that, two[-]and[-]a[-]half months after being continued to . . . PROMISE, [Sanders] was discharged after attempting to smuggle K2 or imitation K2 into the program.

> Probable cause further exists to believe that [Sanders]'s violations are serious and that revocation is desirable. This hearing officer is of the opinion that subject poses a danger to the public safety and should be continued in custody pending the scheduling of a[] F[inal] R[evocation] H[earing (FRH)].

On February 7, 2024, a Board Panel determined "[p]robable cause exist[ed] that the commission of the noted violations [wa]s serious and

A-0152-24

revocation [wa]s desirable. . . ." Therefore, Sanders was to remain in custody pending an FRH.

On March 21, 2024, an FRH was conducted before a hearing officer. Officer Pfeffer and Officer Sass provided testimony similar to their testimony at the probable cause hearing. In addition, Clayton Neal, a First Lead Treatment Assistant at the VOA, testified. He stated he had encountered Sanders on August 24, 2023. He explained Sanders had been subjected to a search upon his return to the facility and Sanders had stated "he [w]as caught with K2." According to Neal, Sanders was "discharged from [PROMISE] as a result." Neal testified that the item seized from Sanders had never been tested and he could not advise as to its chemical composition.

Officer Pfeffer submitted the VOA discharge summary. In addition, she called Arnold Valentin, VOA's Assistant Director of the Addiction and Treatment Program. Valentin testified that he had received a call after Sanders returned to the VOA and was "giving staff a problem with searching him." Valentin described the seized item as "a sandwich bag with green vegetation inside that resembled marijuana or synthetic marijuana and that it was in budded form." He could not "testify if it was actual marijuana or actual K2."

A-0152-24

Valentin explained "that as a result . . . [Sanders] received a disciplinary discharge from the program." Further, Valentin stated VOA "had to discharge [Sanders] based on the contraband and that he was trying to conceal it and bring it into the program." He explained:

> [I]t was contraband either way. . . . [I]f the substance was tested and it was not a narcotic or an illegal substance, it would still be considered contraband because [Sanders] concealed it and tried to sneak it into the program. . . . [E]ven if the item was seasoning, he would still be discharged because of his behavior associated with it by attempting to conceal it and bring it into the program.

The hearing officer did not sustain the violation concerning unlawful possession of CDS because there was "no field testing or lab reports" of the seized item alleged to be K2. In addition, the hearing officer found "the testimony provided to be very limited in nature and d[id] not establish possession of synthetic cannabinoid." Therefore, the "hearing officer f[ou]nd[] the testimony and evidence presented to be less than reliable in terms of establishing clear and convincing evidence."

However, the hearing officer sustained the Special Condition violation. The hearing officer noted the "VOA [d]ischarge [s]ummary" was submitted and "Valentin testified that even if the item seized from [Sanders] was not synthetic cannabinoids, it would still be considered program contraband due to the

6

behavior associated with it and [Sanders] concealing it and attempting to bring it into VOA." The hearing officer found, based upon the VOA discharge summary and the testimony presented, clear and convincing evidence existed to establish Sanders had violated the Special Condition of his parole.

The hearing officer noted Sanders "completed the treatment phase of PROMISE," but on August 24, 2023, he "was found to be in possession of program contraband" and received a disciplinary discharge. The hearing officer found:

> Despite attempts by Parole to assist [Sanders] with his re-entry and rehabilitation, [he] has demonstrated poor coping and decision-making skills and a blatant disregard towards the conditions of his supervision by bringing contraband into an addiction treatment program. This hearing officer finds that [Sanders]'s commission of the noted violation is serious and revocation is desirable. For these reasons, [Sanders] is not amenable to supervision.

Sanders contended the hearing officer had erred because, after "[h]aving concluded that [he] was not in possession of CDS . . . and did not attempt to bring K2 into an addiction treatment facility, the [h]earing [o]fficer should have found that the discharge from the VOA program was without basis." Therefore, Sanders argued "[t]he recommendation of revocation cannot be supported by clear and convincing evidence where the foundation of the violation (discharge

A-0152-24

from a community program) was based on conduct (bringing CDS into the program) that was not sustained." Sanders requested that he be "continued on supervision [subject] to appropriate conditions."

In April 2024, the Board Panel determined that Sanders's PSL should be "revoked as the violation [wa]s serious and revocation [wa]s desirable." The Board Panel concluded Sanders must "[s]erve a [sixteen]-month term of incarceration."

In May 2024, Sanders appealed to the full Parole Board. On July 31, 2024, the Parole Board issued a Notice of Final Agency Decision. The Parole Board found that the "Board [P]anel . . . fully documented and supported its decision pursuant to N.J.A.C. 10A:71-7.18(b)." Moreover, the Parole Board "concur[red] with the determination of the Board [P]anel that clear and convincing evidence exist[ed] that . . . Sanders ha[d] seriously violated a condition of [PSL] and revocation of . . . Sanders'[s PSL] status [wa]s desirable." In addition, the Parole Board considered Sanders's history, including his two prior violations, and applying N.J.A.C. 10A:71-6.12, determined the sixteen-month sentence was appropriate. Thus, the Parole Board affirmed the Board Panel's "decision to revoke . . . Sanders'[s PSL] status and direct[ed] him to serve a sixteen . . . month term of incarceration."

8

On appeal, Sanders argues the Parole Board's decision was arbitrary, capricious, or unreasonable. He contends the Parole Board erred because: (1) the "disciplinary discharge was based on his alleged possession of 'contraband/K2'" and there was no clear and convincing evidence of such possession; (2) "even if his possession of the unconfirmed substance was considered program contraband that could justify his disciplinary discharge, the violation of the Special Condition under those circumstances was neither serious nor persistent and did not make parole revocation desirable"; (3) there was no evidence "presented that showed that [he] had poor coping and decision making skills or had disregarded several parole conditions"; and (4) revocation of parole was not "desirable" because other less restrictive responses to the violation were available.

The parole revocation process is governed by statute, N.J.S.A. 30:4-123.45 to -.76; and regulation, N.J.A.C. 10:A-71-7.1 to -7.18. "[W]e are deferential to an agency's expertise." Berta v. N.J. State Parole Bd., 473 N.J. Super. 284, 302 (App. Div. 2022). Parole Board "members are appointed to bring [their] expertise in 'law, sociology, criminal justice, juvenile justice or related branches of the social sciences.'" Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (quoting N.J.S.A. 30:4-123.47(a)). "Drawing on the diverse

9

backgrounds of its members, the Parole Board makes 'highly predictive and individualized discretionary appraisals.'" Ibid. (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)). Therefore, our review of the Parole Board's decision is limited. Hare v. N.J. State Parole Bd., 368 N.J. Super. 175, 179 (App. Div. 2004). We will "not substitute [our] own judgment . . . even though [we] might have reached a different result." In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Berta, 473 N.J. Super. at 302 (quoting In re Carter, 191 N.J. at 482-83).]

Sanders must establish the Parole Board's decision "was arbitrary, unreasonable or capricious." McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002).

"[R]evocation [is permitted] only on proof by clear and convincing evidence that the person 'has seriously or persistently violated the conditions.'"

A-0152-24

Hobson v. N.J. State Parole Bd., 435 N.J. Super. 377, 382 (App. Div. 2014) (quoting N.J.S.A. 30:4-123.60(b) and N.J.S.A. 30:4-123.63(d)). See also N.J.A.C. 10A:71-7.12(a) ("A parole revocation hearing shall be conducted when: (1) A hearing officer determines that probable cause exists to believe that the parolee has seriously or persistently violated the conditions of parole and that revocation of parole is desirable."). "The Legislature did not . . . define the type of conduct it intended to capture within the statutory standard – 'seriously or persistently violated.'" Hobson, 435 N.J. Super. at 382.

We are convinced Sanders has failed to satisfy his burden. First, Sanders did not establish the Parole Board failed to follow the law. Second, there was "substantial evidence" to support the finding that Sanders had received a disciplinary discharge from the VOA and, therefore, failed to successfully complete PROMISE as required by the Special Condition. Sanders's contention that there is a lack of evidence that he brought CDS to the facility is misplaced. The discharge was effectuated because he surreptitiously had brought contraband to the facility, notwithstanding the lack of evidence that the contraband was actually a CDS. Moreover, Sanders did not establish that the Parole Board had made a clear error in revoking parole and requiring he serve a sixteen-month sentence.

A-0152-24

To the extent we have not addressed Sanders's other arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12